9/9/2016

*amended*

## COMPLAINT

Plaintiff (Daniel Johnson) complains against Defendant (Communications Unlimited Inc.) as follows:

Case No.: 2:16-cv-1337-TMP

### Jurisdictional Allegations

Jurisdiction is based on citizenship of both parties and the amount in controversy; plaintiff is a citizen of the state of Alabama and, likewise, the defendants' headquarter office is also in the state of Alabama—both parties are located in the Birmingham metropolitan region.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

### Statement of Claims

1. Daniel Johnson (plaintiff) was hired effectively on January 20th, 2016 as a "contract" (W-2) employee with Communications Unlimited Inc. (CU) (defendant); the plaintiff was informed that an expected annual salary range would be approximately $40k to $45k.
2. Training was minimal, which led to various unsafe and hazardous conditions which resulted in occupational stress; this ultimately led to sleep deprivation and insomnia.
3. Inconsistent pay on part of the defendants' incompetence—related to mismanagement—resulted in great financial losses.
4. On May 9th 2016 the defendants' failed to provide adequate and timely information regarding the defendants' apparent "loss of contract" in the state of Alabama (Birmingham metropolitan region) from Charter Spectrum and, as a result, the plaintiff was forced to transfer out of state—along with several other technicians from the Birmingham office—to various locations along the Eastern Shore Region including: Rehoboth (Delaware), Ocean City, and Salisbury (Maryland), with the final destination being Collegeville (Virginia) before the plaintiff was effectively terminated on August 4th, 2016; this breach of contract resulted in additional severe financial and economic losses.
5. Plaintiff was told verbally that there would be a per-diem for food, because of [his] traveling technician status, in the amount of $36 per day—nevertheless, the plaintiff affirms that he only received roughly $27 a day; the defendants was failed to inform the plaintiff that the per-diem would not be paid for days not worked and, likewise, the defendants' did not pay the plaintiff per-diem on days in which he was sick—nor did the plaintiff receive sick pay.
6. During the week of July 17th, 2016 the plaintiff made known to the defendants' that he had traffic tickets to pay and asked for time off to travel to Birmingham to correct discrepancies with the Alabama State Trooper's Traffic Division to avoid getting a suspended license. On July 22nd, 2016 the plaintiff made traffic ticket payments—for two different locations—(one being for Escambia County in Florida and the other in

Alabama) in the amount of (-$10.00 + -$221.52) + (-$353.97) totaling -$585.49. Upon making these payments the plaintiff was informed by the Escambia County Traffic Division that a letter informing the Alabama DMV in Montgomery of the plaintiff's failure to pay was sent. To explain, the plaintiff asked for time off and the defendants' blatantly ignored this request, which resulted in the plaintiff's license being suspended.
7. As a result of 6, on August 3rd, 2016 the plaintiff was parked at a gas station where another vehicle collided with [his]'s company vehicle and, as a result of the policemen gathering information related to the plaintiff's license, [he] found out that [his] license was suspended. On August 4th, 2016 the plaintiff contacted defendant(s)—or management—to inform them of the situation and was told that [he] could no longer work for the company until the license was reinstated.
8. As a result of 7, on August 4th, 2016 the defendants' promptly terminated plaintiff's medical, vision, and dental insurance plans and policies—even though [he] paid premiums for that pay period; furthermore, continued coverage for health care is $342.52 monthly, while continued coverage for dental is $23.46 monthly (for a single individual under the same plan).
9. Plaintiff made verbal agreement with defendants' to have personally owned work related property delivered to an agreed upon location; the defendants' failed to return personal property for which [he] has receipts for.

<u>Demand for relief</u>
WHEREFORE, the plaintiff would like to respectfully demand judgment against the defendants' for the maximum allotted sum in the state of Alabama, at the federal level, for: discrimination, repeated breach of contract, and damages—in the categorical forms of: compensatory (actual) damages, because of loss of expected profit (or earnings); consequential damages, because of defendants' incompetence; liquidated damages, because plaintiff had to purchase tools from the defendant, which were taken out of the plaintiff's check bi-weekly and since the contract was breached the plaintiff is entitled to a full refund of money put forth since the defendants' reclaimed their work-related assets; and finally restitutionary damages, because of the pain and suffering the plaintiff experienced at the hands of the defendants', in other words, this form of employment is basically a type of modern day slavery in which the defendants' willfully took advantage of a person in a weak position and exploited [him] (along with many others) for extremely cheap (if not virtually free) labor.

*[signature]*

09/09/16

1008 16th Ave. S Apt D
Birmingham AL 36205
434-439-1178

## COMPLAINT

Plaintiff (Daniel Johnson) complains against Defendant (Communications Unlimited Inc.) as follows:

Case No.: 2:16-cv-1337-TMP

### Jurisdictional Allegations

Jurisdiction is based on citizenship of both parties and the amount in controversy; plaintiff is a citizen of the state of Alabama and, likewise, the defendants' headquarter office is also in the state of Alabama—both parties are located in the Birmingham metropolitan region.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

### Statement of Claims

1. Daniel Johnson (plaintiff) was hired effectively on January 20th, 2016 as a "contract" (W-2) employee with Communications Unlimited Inc. (CU) (defendant); the plaintiff was informed that an expected annual salary range would be approximately $40k to $45k.
   a. *After the hiring process,* the plaintiff was then told that an expected income of approximately $32k to $35k within the first year was typical with steady increases within the sequential years. Plaintiff would like to inform the court that there were a lot of out of pocket expenses accrued which were not made readily available upon the initial interview. Additionally, plaintiff was informed that he could expect a bi-weekly income of approximately $1000 to $2000 every pay period.
2. Training was minimal, which led to various unsafe and hazardous conditions which resulted in occupational stress; this ultimately led to sleep deprivation and insomnia.
   a. The plaintiff would like to present this information to account for the perceived levels of elevated stress; moreover, on occasion the plaintiff, whom pay was performance-based, witnessed several instances in where the defendants' would remove jobs from plaintiff's workload which resulted in lost wages. Additionally, the plaintiff was not presented with proper and adequate ladder safety training until *after* he was "qualified" from defendants' parent company (Charter Spectrum).
3. Inconsistent pay on part of the defendants' incompetence—related to mismanagement—resulted in great financial losses.
   a. Continued economic maladjustments effectively resulted in failure to pay rent and utilities in a timely manner. Specifically, the plaintiff would like to inform the court that [he] has been receiving harassing phone calls from [his] landlord related to collection of late rent payments—it has gotten so bad that the plaintiff says that [he] had to file a police report and that tensions have been so strained that the landlord is committed to a non-renewal of lease. Given the consistent prolonged financial problems the plaintiff has suffered [he] would like to express concerns

    related to fear of having to file for bankruptcy, which would largely make him unemployable within certain private and governmental sectors of employment related to [his] field of study.
4. On May 9th 2016 the defendants' failed to provide adequate and timely information regarding the defendants' apparent "loss of contract" in the state of Alabama (Birmingham metropolitan region) from Charter Spectrum and, as a result, the plaintiff was forced to transfer out of state—along with several other technicians from the Birmingham office—to various locations along the Eastern Shore Region including: Rehoboth (Delaware), Ocean City, and Salisbury (Maryland), with the final destination being Collegeville (Virginia) before the plaintiff was effectively terminated on August 4th, 2016; this breach of contract resulted in additional severe financial and economic losses.
   a. The period of unemployment lasted approximately 4 weeks, during which time Plaintiff acquired 3 traffic tickets. Additionally, the defendants failed to provide adequate time for travel, training, and lodging, which resulted in even more elevated levels of stress; the plaintiff had to sleep on the side of the road after traveling 14 hours in a company vehicle; therefore, the plaintiff would like to expressed that he experienced health issues related to musculoskeletal damage, in addition to issues related to sleep deprivation.
   b. Moreover, once on location in Salisbury the plaintiff was only allotted 1 day off a week because of travelling tech status and on one occasion (during the week of July 4th, 2016 the plaintiff was forced to work over 15 days straight without any days off.
5. Plaintiff was told verbally that there would be a per-diem for food, because of [his] traveling technician status, in the amount of $36 per day—nevertheless, the plaintiff affirms that he only received roughly $27 a day; the defendants was failed to inform the plaintiff that the per-diem would not be paid for days not worked and, likewise, the defendants' did not pay the plaintiff per-diem on days in which he was sick—nor did the plaintiff receive sick pay.
6. During the week of July 17th, 2016 the plaintiff made known to the defendants' that he had traffic tickets to pay and asked for time off to travel to Birmingham to correct discrepancies with the Alabama State Trooper's Traffic Division to avoid getting a suspended license. On July 22nd, 2016 the plaintiff made traffic ticket payments—for two different locations—(one being for Escambia County in Florida and the other in Alabama) in the amount of (-$10.00 + -$221.52) + (-$353.97) totaling -$585.49. Upon making these payments the plaintiff was informed by the Escambia County Traffic Division that a letter informing the Alabama DMV in Montgomery of the plaintiff's failure to pay was sent. To explain, the plaintiff asked for time off and the defendants' blatantly ignored this request, which resulted in the plaintiff's license being suspended.
7. As a result of 6, on August 3rd, 2016 the plaintiff was parked at a gas station where another vehicle collided with [his]'s company vehicle and, as a result of the policemen gathering information related to the plaintiff's license, [he] found out that [his] license was suspended. On August 4th, 2016 the plaintiff contacted defendant(s)—or management—to inform them of the situation and was told that [he] could no longer work for the company until the license was reinstated.

8. As a result of 7, on August 4th, 2016 the defendants' promptly terminated plaintiff's medical, vision, and dental insurance plans and policies—even though [he] paid premiums for that pay period; furthermore, continued coverage for health care is $342.52 monthly, while continued coverage for dental is $23.46 monthly (for a single individual under the same plan).
    a. Plaintiff was concerned about the tax penalty for not having medical insurance and, as a result, information provided by healthcare.gov presented a health insurance plan that was greatly outside the plaintiff's budget; the plaintiff currently lives on a fixed weekly income—in the form of unemployment compensation—in the amount of $162.
9. Plaintiff made verbal agreement with defendants' to have personally owned work related property delivered to an agreed upon location; the defendants' failed to return personal property for which [he] has receipts for.

## Demand for relief

WHEREFORE, the plaintiff would like to respectfully demand judgment against the defendants' for the maximum allotted sum in the state of Alabama, at the federal level, for: discrimination, repeated breach of contract, and damages—in the categorical forms of: compensatory (actual) damages, because of loss of expected profit (or earnings); consequential damages, because of defendants' incompetence; liquidated damages, because plaintiff had to purchase tools from the defendant, which were taken out of the plaintiff's check bi-weekly and since the contract was breached the plaintiff is entitled to a full refund of money put forth since the defendants' reclaimed their work-related assets; and finally restitutionary damages, because of the pain and suffering the plaintiff experienced at the hands of the defendants', in other words, this form of employment is basically a type of modern day slavery in which the defendants' ~~took~~ willfully took advantage of a person in a weak position and exploited [him] (along with many others) for extremely cheap (if not free) labor.